I'm informed by our clerk, our courtroom deputy, that all council are present, all parties and council are present and accounted for, so we'll dispense with the calling of the calendar and hear the appeal in Holcombe v. Matsyborchuk. Good morning. My name is Vladimir Matsyborchuk. I'm part of the Ministry of Interest in this case. This case is about an attorney who worked for seven years for the client, and at the end of his term, the client decided not to pay legal fees, not to compensate the attorney, and send the attorney a notice to discharge for cause. The client used one set of allegations which, according to the client, constitute discharge for cause in the notice in December 2013. When the case was settled in 2015, and it was necessary to extinguish attorney's lien, the client used a completely different set of allegations constituting discharge for cause. In this case, during seven years, I expended thousands of hours defending this client's interest. I filed hundreds of documents in four federal courts in two states, in New York and California. As you understand, I worked with my assistant. We both opposed four law firms at some point in this litigation against us, was four law firms, two from U.S. surveys and two from the United States. 2,500 e-mails that we count and presented to the court from both sides. In order to protect my interest, I filed a motion for compensation and quanta merit immediately after I was discharged. It was, this motion was based on allegations which were made by Halcom in her original notice for discharge. It was, motion was filed in February 2014. During the whole year, other side opposed. Then there was attempt to settle, and then I was allowed to reply. And then judge in the district court issued decision that my motion was denied with right to renew at the end of litigation. And I thought it's going to be a completely different consideration of this discharge after, at the end of litigation. That's why I attempted even appeal from this ruling. Appeal was filed in this court. And still I was forced to wait until the case is over. And not only over, the case was settled and settled secretly in 2015. Magistrate judge approved the settlement, supervised the settlement, and the district court approved the settlement. And after that case was dismissed. Four months after case was dismissed, I filed a motion to extinguish my lien, containing a number of allegations, absolutely outrageous allegations. And I was forced to reply, to oppose this motion, and presented emails, some of emails of my client. And I still was, during this, I still was in a state of shock. I was in a state of shock. During the evidential hearing, was deprived of, as a result of evidential hearing, was deprived of my fees. The client used allegations in this case, which has nothing to do with my work in court. It was a number of issues raised, rising from personal relations with this client. And I was forced to resign. I, I, nothing was, I tried to bring attention to what I did in court. I presented list of index numbers of cases in which I was involved on behalf of this client. Everything was ignored. Nobody interested what I did in court for this client. Based on my alleged misbehavior in this case, I was deprived of my legal fees. This is a completely new rule in this jurisdiction. I was deprived of my  legal fees as a legal matter. Separate and apart from your case, do you disagree with that finding of ethical violations? So assume a finding of serious ethical violations. Serious ethical violations may relate to the, to, to the damages to, to my client in court. Okay, so my question, I'll repeat my question. This is very general question. It's very difficult to respond to this question generally. Sir, I will repeat my question for your benefit. Do you agree that a court's finding of serious ethical violations justifies, uh, the denial of legal fees to the lawyer who's been found to have engaged in serious ethical violations? If, uh, if this serious ethical violations related to attorney's malpractice or, or suggested attorney's malpractice, which damaging the interest of client, I agree. Okay. You've reserved, uh, three minutes for rebuttal. So we're going to hear from. Uh, I, uh, thank you. My, my, my assistant says that this is 56 seconds. No, it's the clock is starting to go up now. So you, you're a minute over your time, but we'll give you three minutes for rebuttal. May it please my adversary in the court. My assistant, uh, Ms. Holcomb retained Mr. Matsuborichuk and I submit to your honors that a retainer agreement is something more than a contract. It forges a unique bond and a relationship between the principal who is the client and the agent who is an attorney. It's akin to a covenant. And as attorneys, we are duty bound to advance our client's interests ahead of our own and to respect our client's autonomy as a principal. Uh, this relationship of attorney client is policed by the judiciary, by the rules of professional responsibility and by the grievance committee. As attorneys, we often take an oath to demean ourselves before the courts. And I submit to you that this attorney client relationship was sabotaged and mocked by attorney Matsuborichuk. And in his own rule, in his own words, written words, undisputed attorney Matsuborichuk has written to his client stating the following, I have the right to determine my financial interest in all non-monetary relief received in this case. I have the right to demand compliance with my directions. In this respect, please be advised that as long as I'm representing you, you are not free in your decisions regarding the resolution of the legal issues pertaining to this matter. There are rules and procedures in determining a fair and reasonable settlement. And as I have said a million times before, I will determine whether a settlement is reasonable. If you disagree, I will immediately cease representing you and place a lien on your claim. I suggest two points. One, transfer your rights under the retainer to someone who will pay expenses and uphold the agreement. Or two, settle. I told you during our last conference that I believe you require a guardian. You must comply with my legal decisions and you have no room for further discussion on that topic. I firmly reject your pervert views and corrupt practice that you employed in this case. I reject all your bizarre and violent allegations. If you have any questions, please do not hesitate to contact me. We've read the record of this case, so we're familiar with what you're reading. And there was a point where Mr. Attorney Matsyborchik suggested that Ms. Holcomb obtain a law guardian. As she was insulted by this, and Mr. Attorney Matsyborchik doubled down and stated that he was trained in the fields of forensic psychiatry and forensic medicine and he put forth in an email as an attachment his diploma and he underlined the courses having to do with forensic psychology and forensic psychiatry that he took in the former Soviet Union between 1976 and 1981. And he then claimed disingenuously that the appointment of a guardian does not speak directly about mental disability. It has to do with any kind of disability or physical incapacity. Ms. Holcomb did not change any allegations. Ms. Holcomb, before Attorney Matsyborchik was even discharged, expressed displeasure with his representation in an email one year prior. And she stated that Mr. Attorney Matsyborchik has threatened her with withdrawal and was leveraging fear. She also said that he made outrageous insults, claiming there's something wrong with her, that she's incompetent and has a cognitive impairment. Mr. Attorney Matsyborchik has included things in the appeal which were not in the hearing below and which weren't even part of the record below, including an alleged lawsuit that Ms. Holcomb filed against some prior counsel. In fact, Ms. Holcomb was in the record below during the hearing, was that while this was going on, Attorney Matsyborchik filed a lawsuit against Ms. Holcomb for an alleged referral fee in Bronx Civil Court, and Attorney Matsyborchik lost that case. Aside from the undisputed comments and emails of Attorney Matsyborchik, there was the unrebutted testimony of Ms. Holcomb who was deemed to be credible that Attorney Matsyborchik called her belligerent, nasty, incompetent, senseless, inadequate, crazy, and other insults. Attorney Matsyborchik called no witnesses during this hearing before the magistrate judge. I'd like to address the standard of review. As your honors know, the magistrate judge made findings after a full-blown evidentiary hearing. The district judge reviewed that de novo, and for fee decisions, the standard of review is an abuse of discretion. For factual findings, the standard of review is clearly erroneous. So these are highly deferential standards of review. The district court here relied on these Garcia elements from Judge Gleeson. Yes, your honor. And I know that we affirmed it as a general matter, but have we actually explicitly embraced those elements? Well, I believe so. Let me first say, if not, this is a great opportunity to do that, but I believe that in the Louima case, when you say we, you mean the Second Circuit. I don't know if the Second Circuit has embraced it. I think this may be a case of first impression at the Second Circuit. But looking at the Garcia elements, as the district judge did, it's plain that Attorney Matsyborchik, usurping the client's settlement authority, impugning her sanity, coercing her, and threatening to withdraw, and intimidating her, clearly violated at least four or five of the factors set forth in Garcia. And at the hearing itself, the magistrate judge found that Attorney Matsyborchik was gratuitously combative, and that confirmed and corroborated the factual findings. I would submit to your honors that there is no basis to overturn, especially under the standard of review, the findings of the district judge, that not only that there was cause for this discharge, but that there was ample cause for Ms. Holcomb to have discharged Attorney Matsyborchik. And if there are no questions, I thank your honors for your time. Thank you, Mr. Nardo. Mr. Matsyborchik, you have reserved three minutes for rebuttal. First of all, standard for reviewing this case is de novo, because legal conclusions of the district court denying a request for compensation is for de novo review. I was not just, my lien was not just extinguished. My motion was denied. My motion for discharge was denied. I was not rested on this motion. I was not rested on my case. There was an entire hearing. I don't hear. There was an entire hearing. So when you say you were not heard on your motion, was there not evidence? Weren't you allowed to cross-examine and so on? Your Honor, not. Because scope of the hearing was limited to whether I was discharged for cause, and that's it. I tried to change this. I tried several times to bring Ms. Holcomb's behavior, why everything happened at the end of litigation. And I was told that Ms. Holcomb's behavior is moot in light of your discharge for cause behavior was moot. So I was not heard on my motion. The hearing was ended on a perceived understanding of this magistrate judge that I was laughing. I was not laughing. I was not laughing. I was not laughing. I was not laughing. I was smiling because a plaintiff stated that she was fearful of me. So on page 354 of the appendix, in the transcript of that hearing, the court says, asks, why did she not file a complaint? I'll overrule the objection. And the plaintiff says, I didn't answer because I was frightened. Your former client says you're laughing. Question, I'm laughing because I don't understand. I tried to finish this explanation, and I was not given an opportunity to finish it. In case it was not, if you read the, if you read in the transcript, you should read the order of the magistrate judge. He stated in the order that the party arrested their cases. Did you see in the transcript that the party arrested their cases? So in this situation, I was not allowed to finish my, not only cross-examination, but the hearing as well. And I tried to bring this attention to the district court, and I know why I was deprived, because the demeanor of this magistrate judge was incredible. He clearly stated that I'm blind. He knew that I'm a blind attorney, and he clearly stated that I'm blind. And he stated that you are not allowed to even use legal assistance during this hearing. I believe that, I understand why I was dis, was disliked by the district court. I bring attention that this case was delayed for an incredible amount of time. Union was delayed with his, with its answer for five years in this case. And then for another, filed frivolous motion to, to dismiss for five years. So I, I ...       . . . . . . . . . . . . . . . . . . . . I was denied. Seven years I was denied discovery in the matter. No disclosure was allowed. I tried. If you just heard the e-mails, generally counsel appeared, a period and read the e-mails. I ... It was six e-mails, six  messages saying, I didn't know what would happen. I read the e-mails when she praised my work. And you see this. Right. I mean, we are familiar, very familiar with the record in this case. I thank you for your attention. We will thank you both for your arguments, and we will reserve decision.